Good morning, Your Honor. I'm Phil Hantai. I represent Mr. Alvarez-Espinoza. I don't know that I have a whole lot to add to what I've already tried to lay out in the briefs. I think that maybe the one thing that I could perhaps make clear was in the 924d argument in my papers, which would be on 38 and 39 of my brief. And I was talking about the statutory language there in 924d and whether those 25-year sentences had to be stacked as per the statutory language. And my point being, and I don't know that I made all that clearly, is that although that section initially says no term of imprisonment on a person under the section which shall run concurrently with any other terms of imprisonment imposed on the person, it goes on to clarify that that includes a crime of drug trafficking, a crime of violence or a drug trafficking offense. The one thing that it does exclude, which I found to be curious, and I think was the point that I was trying to make, is it doesn't reference that section that it's in, in the sense that it should be consecutive. Hey, you know, even if it's a drug trafficking crime, we have to run it consecutive with the underlying crime. But it has no language that says, in addition to those things, also under this section it should be consecutive, which gives us the idea that the 25-year sentences should be consecutive. Mr. Hantel, is it your position that we should defer consideration of at least the 924c1a portion of this case until the Supreme Court decides Abbott and Gould? Probably. I think that obviously that issue is probably squarely before the United States Supreme Court, you know, and I know that they granted cert very early in this year, so I was hopeful that we would get something, but obviously we did not. So I don't know what Your Honors would do. Certainly that would make judicial economy. We like that. Counsel, can I go back to the point you were just making about the statutory language? Yes. Why shouldn't I read, let's see, what am I looking at here? 18, 924, is it c, c1, c, Romanette 2, have I got that right? No term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person. Why shouldn't I read that language to include any other counts that he just stood trial and was convicted on and on which the court is about to sentence? Well, I understand that that's what this court has found, I think, previously in Beltran, and, again, I think that my point, again, relates back to the curious nature in the way that that statute is constructed above, which I guess would be the subsection above, which is 924c1d, which specifies the crime of violence, specifies the drug trafficking crime, but then doesn't, again, say also under this subsection, guys. And that's the issue, as I understand it, that the Supreme Court will hopefully give us guidance on in Abbott and Gould. Well, as to whether the seven-year, I think that Abbott and Gould are going to address whether, because there's two things working here, the 924c section, that's what I put it, which is that initial firearms count, I've had no others, I get seven years consecutive or ten or five depending on whether I've read it. I think that Abbott and Gould are going to address whether, if I have a second firearms count, do I have to do, does the court have to do 25 consecutive to the seven, rather than whether you just get 25 because I have a second gun and the seven doesn't have to be consecutive. The problem here, as I understand it, is that you've got at least five separate hostage victims and the possession of the firearm with regard to each and every one of them. Correct. Yeah. And again, that's why, I mean, I guess if I step back and try to take my lawyer glasses off a little bit, I guess that's the thing that is shocking about this case is the, and even the trial court noted it, and certainly he is not one of the lighter sentencers in the District of Arizona, noted that he thought this sentence was excessive when you're talking about, I'm carrying a gun in a hostage-taking situation and there's this many hostages that I can prove. All of a sudden I have a 107-year sentence. Well, it is somewhat ironic that he rejected the government's argument for life imprisonment and then imposed 137 years. Right. Well, I think that he felt like he was, I mean. Because that was the statutory firearms. That's what he believed the statutory construction was. And so I guess that's kind of the issue, again, that I move on to when I talk about the 3553 issues. And again, certainly if we were to allow a court to have some sort of discretion in these cases where we have 3553, look, every other co-defendant in this case who took a plea, okay, I understand that. And that's the benefit of taking a plea is you get a lower sentence. But we have, you know, the highest sentence is 300 months, yet this individual goes to trial, probably less culpable than the 300-month person, yet gets whacked with 139 years. Mr. Hantel, do you know how the Bureau of Prisons would treat a 137-year sentence? It used to be back in the good old days before the sentencing guidelines that any term in excess of 30 years, you were considered eligible for parole after 30 years. So if you got life and you were there for 30 years, they would consider you for release. When they calculate the mandatory release date, do you know what they would do with a 137-year sentence? I don't, but I did in the opening pages of the brief where we have to lay out what his mandatory release date is, I gave it to you and it was 2127, thank you. So, you know, again, we talked about it. 2127. 2127, September 24th. And how old is he? He was roughly 20. I wasn't trial counsel, but I think he was 20. That's the judge, yeah. Did it come from a long-lived family, perhaps? I don't know. I can't imagine that time in prison is going to help that. But, you know, I think that that was the crux of the argument is when you look at it and you talk about the con, that maybe the statutory constructions can allow some discretion in backing off what I would submit to your honors. It's a very harsh sentence. Did you wish to say anything more, add to your brief on the witness issue? I don't. I know that this court, maybe I could just replay what was just said. Yeah, right. I don't know. Well, how would he have helped your client's cause? That's, I guess, my question. Right. And, again, you know, I mean, we're kind of, you know, it's like an ineffective assistance of counsel argument. You know, when you don't know what he's going to say because he's been deported, how is he supposed to help my client? Well, we know what he told the ICE agent because that was recounted in the affidavit in support of the search warrant. Correct. Is there any other interview or any report that memorialized what they were in for? No. And I think that there were some troubling issues with it, number one, because he was mute. They were, I guess, doing the scratch on a piece of paper, answer the question. The second thing that is troubling to me, and I tried to bring it up in the papers, was he walks out of the house. And for them to decide, oh, he's a smuggled alien and not part of this conspiracy, so we're just going to deport him, I think is troubling. I know that we have testimony from the agent, and I guess maybe it would even maybe rise to the level of expert testimony, that, hey, because he was mute, he had larger freedoms than your average smuggled alien. But by his own testimony, he went to that house, was brought to that house to guard the aliens, and then is allowed to leave and then is merely deported. And so I don't know that that passes the smell test necessarily. But, again, that's troubling, I think. And the way that he could help the client, and, again, it's conjecture because we haven't interviewed him, is that he would have better details of what was going on, who was guarding, and that sort of thing, which I tried to bring up in the papers, that he had the, you know what, I think that when you're relying on the testimony of aliens who are scared, obviously there's violence going on in the house, there's the threat of violence, there's guns and that sort of thing, and they're trying to figure out where they're going to come up with the money to pay the smugglers. But to dismiss the indictment, you really have to show dead faith, don't you? Absolutely, and that's what the law is. And I don't know, you know, we never saw the actual notes that were taken between the officers and this alien, so we don't know if there was something that was scathing. And I don't know that, certainly I would assume that they would disclose that as Brady. But here I think that, you know, he could have maybe helped in a certain way in that he wasn't under that threat, so he had a better observation of who was guarding. But we're speculating. Did you agree that your client, for whatever reason, didn't make the showing necessary to prevail on this aspect? I mean, in terms of bad faith of the government? I don't know that he could have in the sense that once the agent is deported until you know. I understand that. I understand good reasons why he didn't. But do you agree that he didn't do it? At first blush, it doesn't appear from the record that he does. I mean, I certainly appreciate your candid admission. Thank you. He could have. Thank you. If I have anything else. I'm here to answer the questions. Thank you. Good morning, Your Honors. My name is Carla Hodes-Delore, and I represent the government in this matter. I'll first talk about Mr. Sanchez, the alien who was deported since we were just finished discussing that. The defense is unable to show that the government engaged in bad faith in deporting him, and he's also not able to show the prejudice prong. I think he's already, in effect, confessed that they're not going to pursue that. So maybe we can pursue a different element. I certainly will not. I just didn't know if you wanted me to address anything or what. With respect to the consecutive nature of the sentences the defendant received on the 924C counts, this court has held in the United States Beltran that whenever the government charges more than one 924C, one count in a single indictment, each additional count is to be treated as a second or subsequent conviction and therefore carry the mandatory minimum sentence of 25 years. So as the district court noted, it was bound to run each 924C count consecutive to the prior one. Does the government agree? I know this is a slightly different prong of the same thing. Does the government agree that we need to await, for judicial economy purposes, the outcome of Abbott and Gould before we rule in this case? Yes, that would be better for judicial economy with respect to the sentence on count 10 and whether or not the exception clause of 924C applies to it. And with regard to the defendant did receive a harsh sentence in this case, but that is because Congress has determined the mandatory minimum sentences that are to run consecutive in this case. So from your perspective, just like the district court concluded, our hands are tied. Congress is so determined and that's it. That is correct. And this court, in fact, has upheld in other cases in this circuit other mandatory consecutive sentences for 924C1 counts. If this court has no other questions. Does anybody have any further questions? I think given what has occurred in argument that we will not order the case submitted at this time and we will enter an order to firm. Is that? Yes, absolutely. Thank you. Thank you both for the argument. Thank you. I appreciate it. Before we hear the last case, can I have a word with the court, please? All right. We'll hear the last case for argument, which is the SEC versus Todd.
judges: Schroeder, Tallman, Smith M.